**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 14-CV-24737-CIV-TORRES

MIROSLAVA LITTERDRAGT,

      Plaintiff,

v.

MIAMI-DADE COUNTY, FLORIDA,

      Defendant.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

      This matter is before the Court on Defendant's Motion for Summary Judgment ("Motion"). [D.E. 58]. The Court has reviewed the Motion, Plaintiff's response [D.E. 67], Defendant's Reply [D.E. 81], relevant authority, the record evidence submitted in support of and in opposition to the Motion, and has considered the arguments of counsel presented at the June 21, 2016, hearing. For the reasons outlined below, Defendant's Motion is **GRANTED.**

***I. BACKGROUND***

      This case involves a female police officer who was temporarily relieved of duty pursuant an investigation that took place following allegations that she was missing evidence and open case files. [D.E. 38-1 at ¶ 10]. The Plaintiff has been a police officer at Miami-Dade Police Department since 2004. The events leading up to this case occurred while she was a detective in the General Investigative Unit and on uniform patrol at the Intracoastal District. On February 27, 2012 the Plaintiff transferred out

of the GIU to work in uniform patrol. [D.E. 59 at ¶ 7]. Det. Samir Amado replaced the Plaintiff at the GIU.

In response to a drive-by shooting at a funeral home in North Miami in April 2012, Lt. Robert Wilcox ordered Sgt. Jose Pineda to gather all of the open shooting cases that are being investigated by Intracoastal GIU detectives.[1] [D.E. 68 at ¶¶ 15-16]. Sgt. Pineda, Plaintiff's former supervisor at GIU, could not locate any of the Plaintiff's open-pending case files after a search of the GIU office. [D.E. 68 at ¶ 17].

A victim from an open-pending case that the Plaintiff investigated called for a status update on his case. Another GIU detective, Det. Aguilar, took the call and searched for the file to update the victim but was unable to locate the Plaintiff's case file regarding this particular case. [D.E. 68 at ¶ 20]. Sgt. Pineda told Aguilar to contact the Plaintiff in an effort to locate her missing open case files. Aguilar sent Plaintiff a text message inquiring about the files, to which the Plaintiff replied "Good Luck ☺ what are the dispo?? CBA??" The Plaintiff called Aguilar to explain the situation. She admitted to shredding some files and to missing a box of open pending files. [D.E. 68 at ¶ 24(a)]. The Plaintiff later characterized the files she shredded as her "shadow files." [D.E. 68 at ¶ 26(a)].

Aguilar informed Sgt. Pineda that the Plaintiff shredded some of her files. Sgt. Pineda then reported to Lt. Wilcox what Aguilar had told him. On April 17, 2012 Sgt. Pineda set up a meeting with the Plaintiff. The Plaintiff's supervisor on uniform patrol, Lt. Lima, told her to bring all of her open case files to the meeting with Sgt. Pineda.

---

[1] Lt. Wilcox and Sgt. Pineda are the Plaintiff's former supervisors at the Intracoastal GIU.

The Plaintiff could not bring any of the files with her to the meeting because the Plaintiff admitted to be missing a box of open-pending files. [D.E. 68 at ¶ 36(a)].

Following the meeting between the Plaintiff and Sgt. Pineda, Lt. Wilcox ordered all of the sergeants in the Intracoastal District's GIU to account for all of their detective's case files. Sgt. Pineda used the computer filing system to cross-reference what physical files should be associated with each detective. Sgt. Pineda was able to reconcile each detective's case files from his squad, except for the Plaintiff. [D.E. 68 at ¶ 40]. The Plaintiff contends that Sgt. Pineda did not complete a thorough search because during discovery the Plaintiff found that six other detectives were missing case files. [D.E. 68 at ¶ 40(a)]. The rest of the Intracoastal GIU sergeants reported that they had accounted for all of their detective's case files.

After receiving the report that all of the detectives' case files from the Intracoastal GIU squads were accounted for except the Plaintiff's, Capt. Rock ordered Lt. Wilcox and Sgt. Pineda to notify the Professional Compliance Bureau of the situation. [D.E. 68 at ¶ 48]. Furthermore, Pineda and Wilcox were able to show Sgt. Calvo of the Professional Compliance Bureau that not only was the Plaintiff missing case files, but she was also missing physical evidence associated with ten of those case files. [D.E. 68 at ¶ 49].

The Professional Compliance Bureau informed the Plaintiff's commanding officers that before it can investigate misconduct the Plaintiff will have to be given a direct order to produce the missing case files. Capt. Rock, the acting Intracoastal District Commander, made the decision in conjunction with the Professional Compliance Bureau to give the Plaintiff a direct order to produce her missing files or

be relieved of duty. [D.E. 68 at ¶ 51]. At the time this order was given none of the Plaintiff's former or current chain-of-command knew of any other detectives missing case files. [D.E. 59 at ¶ 62].

On May 2, 2012, Sgt. Pineda and Lt. Lima met with the Plaintiff and ordered her to produce her open case files. [D.E. 59 at ¶ 59]. When the Plaintiff could not produce the missing files, they put her on relieved of duty status. *Id.* The following day, April 3, 2012, the Professional Compliance Bureau began investigating the Plaintiff's missing files.

While the Plaintiff was relieved of duty she did not receive any reduction in salary and continued enrollment in her employer healthcare and dental benefits. [D.E. 59 at ¶ 55.] The Plaintiff contends that as a result of being relieved of duty she missed out on over-time; she was deprived from working off-duty assignments; she was unable to work the night-shift; she did not have the opportunity to earn a promotion; and she lost the use of a squad car for personal use. [D.E. 68 at ¶ 55(a)].

The Plaintiff asserts that she filed an EEOC questionnaire and signed the complaint on May 16, 2012 regarding gender discrimination against Miami-Dade Police. [D.E. 68 at ¶ 65(b)]. The EEOC did not docket the file until May 30, 2012 and the County did not receive the EEOC complaint until June 11, 2012. [D.E. 59 at ¶ 69]. The Plaintiff contends that Sgt. Calvo approached the State Attorney for possible prosecution over the missing files on May 22, 2012 and that he had a copy of the EEOC complaint when he did so. [D.E. 68 at ¶ 65(c)]. The County contends Sgt. Calvo notified the State Attorney May 16, 2012. [D.E. 59 at ¶ 65]. These dates are immaterial

because the County was not served with the EEOC complaint June 11, 2012. Based on the Plaintiff's assertion that she only shredded copies of her files, the State Attorney declined to charge the Plaintiff. The State Attorney closed the Plaintiff's file on August 28, 2013. [D.E. 59 at ¶ 71].

During the investigation into Plaintiff's missing files in November 2013, she first leveled accusations that 13 male detectives were missing files. [D.E. 68 at ¶ 74]. Sgt. Calvo followed up with the detectives accused of missing case files and they all denied, under oath, that they were missing any case files. [D.E. 68 at ¶ 77]. Now, the Plaintiff claims that her replacement Det. Amado is responsible for her missing files and the chain-of-command has chosen to investigate her and not him. On November 18, 2013, while Sgt. Calvo's investigation was still on-going the Plaintiff was re-instated. Following the investigation the allegations against the Plaintiff were found "not sustained" by the Disposition Panel and she faced no disciplinary actions as a result. [D.E. 59 at ¶ 83.]

## II.  ANALYSIS

### A.  *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party that contends a fact is or is not genuinely disputed must support the contention by "citing to particular parts of materials in the record . . . or [by] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." *Id.* at 56(c)(1). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592-94 (1986); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### B.   *Plaintiff's Prima Facie Burden Fails*

In a case such as this one where there is only circumstantial evidence of discrimination, courts use the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework to analyze a Title VII claim. Under the *McDonnell Douglas* framework a

plaintiff must establish a *prima facie* case for discrimination, which consists of the following: "(1) the plaintiff was a member of a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of the protected class were treated differently." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). Once a plaintiff establishes a *prima facie* discrimination case, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its actions." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007). If the defendant is able to articulate a non-discriminatory reason for its actions the burden then falls on the plaintiff to show that the reason proffered was not the real reason for the employer's actions. *See Holland*, 677 F.3d at 1055.

Miami-Dade County ("the County") does not contest that the Plaintiff meets the first two criteria to prove a *prima facie* case of gender discrimination under Title VII. The Plaintiff is a woman, which is a protected class under Title VII and the Plaintiff is qualified for her job. The County asserts that being relieved of duty while under investigation is not an adverse employment action under Title VII. Additionally, the County contends that the Plaintiff cannot point to any similarly situated male detectives that were not relieved of duty pending an internal investigation for missing open-pending case files and physical evidence.

The Plaintiff has identified Det. Samir Amado as her comparator for the fourth criteria of a *prima facie* case for gender discrimination under Title VII. She argues that had Miami-Dade Police done a proper investigation they would have found that other male detectives were missing files. She asserts specifically that Det. Amado was the

person responsible for her missing files and Miami-Dade Police chose to focus their investigation on the Plaintiff because she is a woman. Furthermore, the Plaintiff contends that the County's incompetent filing system and investigatory skills led to making her the scapegoat for a male detective losing her open-pending case files when she transferred out of the Intracoastal GIU.

### *1. Plaintiff Did Not Suffer an Adverse Employment Action*

In this case the Plaintiff must show that being relieved of duty pending an investigation caused a "serious and material change in terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The Plaintiff's "subjective view of the significance and the adversity of the employer's action is not controlling," instead the "employment action must be materially adverse as viewed by the reasonable person in the circumstances." *Id.*

During her time on light duty the Plaintiff claims that she missed out on possible promotions, overtime pay, night-shift differential pay, and the use of her take-home car. The relief of duty status did change her employment attributes, but the action taken by the employer was for suspicion of violating Miami-Dade County Police procedures. Moreover the Plaintiff did admit to Det. Aguilar to have shredded some of her files and missing others, a fact that the Plaintiff does not dispute. Because of the Plaintiff's admissions it was reasonable for Miami-Dade Police to have launched an investigation into this matter. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules"); *see*

*also Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1341 (11th Cir. 2015) ("On-the-ground determinations of the severity of different types of workplace misconduct and how best to deal with them are exactly the sort of judgments about which we defer to employers").

The record also shows that Plaintiff was only temporarily relieved of duty and was ultimately reinstated. While on this status her standing as an employee did not change, she still enjoyed full compensation and benefits. "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions." *Kidd v. Mando American Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001)). The move was temporary and does not per se have lasting effects on the Plaintiff's career moving forward. The Plaintiff's temporary relief of duty with full pay and benefits is not a materially adverse change in employment.

More fundamentally, however, employees – especially public employees – placed on administrative leave and suspension pending an investigation do not suffer an adverse employment action. *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ("We have held that 'a suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action'") (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004)). Here, the Plaintiff was placed on light duty with full pay and employer benefits. The Plaintiff was not suspended or put on leave only a temporary reduction in responsibilities. The Plaintiff was eventually returned to her same position, thus no adverse employment

action. *Peltier*, 388 F.3d at 988 (holding that when the plaintiff was restored to her position at the end of the investigation she did not suffer an adverse employment action); *see also Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000) ("Investigating alleged violations of departmental policies and making purportedly false accusations are not adverse employment actions").

And even if the Court were to find that being relieved of duty pending an investigation were an adverse employment action the Defendant would still be entitled to summary judgment. The Plaintiff does not have any evidence that any similarly situated male detectives were treated more favorably for missing open-pending case files and physical evidence.

### 2. *Plaintiff Fails To Identify an Adequate Comparator*

The Plaintiff bears the burden to show that "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). "To be an adequate comparator, the preferentially treated individual from outside the plaintiff's protected class has to be similarly situated to the plaintiff in all relevant respects." *Galdamez v. DHL Air Exp. USA*, 578 Fed. Appx. 887, 891 (11th Cir. 2014) (internal quotations omitted) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011)). The Plaintiff must point to a comparator that has been accused of "nearly identical" misconduct as her, and that Miami-Dade Police chose not to investigate and place the comparator on relieved of duty status.

The Plaintiff argues that Miami-Dade Police did not consider her replacement in the GIU when her case files went missing. The Plaintiff contends that Det. Amado was also missing case files; her case files to be precise. She asserts that Miami-Dade Police chose to investigate her over Det. Amado because she is a woman. Yet it is clear on the record that the chain-of-command was not aware of any other detectives, let alone male detectives, that were missing any case files when the decision was made to place the Plaintiff on relieved of duty status. Indeed the Plaintiff admitted to be missing files prior to the investigation; hence Miami-Dade Police was justified in investigating her at that time. *See, e.g., Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("Admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct").

Miami-Dade Police supports its decision to investigate and to place the Plaintiff on relieved of duty status by laying out the information it knew at the time it made the decision. It is clear in the record that Miami-Dade Police made the decision to place the Plaintiff on relief of duty and investigate her misconduct based on the knowledge that no other detectives at the Intracoastal GIU were missing case files except the Plaintiff. "[A]n employer successfully rebuts any *prima facie* case of disparate treatment by showing that it honestly believed the employee committed the violation." *Id.*

The Plaintiff first accused 13 other male detectives, and Det. Amado specifically, of missing case files in November 2013 during her investigation. The other male detectives all denied, under oath, to be missing any files. But this accusation was not brought to light until well into the Plaintiff's placement on relieved of duty status.

Even if these other detectives and Det. Amado were missing files, Miami-Dade Police did not know at the time it decided to place the Plaintiff on relief of duty. *Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 829 (11th Cir. 2005) ("Where employees have engaged in similar conduct, but the supervisor is not aware of one employee's conduct, this conduct may not be considered in determining whether the employees are 'similarly situated.'"); *see Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003).

In sum, Plaintiff's burden to present a prima facie circumstantial case for discrimination proved too much to bear given the undisputed facts in this record. On that basis, the Court has no alternative but to grant summary judgment in Defendant's favor as a matter of law.

### C.  *No Showing of Pretext*

Assuming that the Plaintiff was able to prove a *prima facie* case she has not rebutted Miami-Dade Police's legitimate reason to investigate Plaintiff at the relevant period of time. And "[o]nce the presumption of discrimination is rebutted . . . the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination." *Smith*, 644 F.3d at 1326. Plaintiff has not done so.

In order to demonstrate pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005)

(quotation omitted). Conclusory allegations of discrimination, without more, are not sufficient. *See, e.g., Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996). Plaintiff must instead show that the employer's decisions were pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir. 2004) (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County,* 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)).

Thus a plaintiff's showing that an employer's proffered reason is unpersuasive does not necessarily establish that the plaintiff's proffered reason is correct; a district court still must conclude that the employer's real reason was impermissible. *See St. Mary's,* 509 U.S. at 524. To this end a breach of an internal policy alone does not amount to a showing of pretext. *Springer v. Covergys Customer Mgmt. Group., Inc.,* 509 F.3d 1344, 1350 (11th Cir. 2007). And "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Pennington v. City of Huntsville,* 261 F.3d 1262, 1267 (11th Cir. 2001) (citation and internal quotation marks omitted).

The record is clear that Miami-Dade Police had a legitimate reason to investigate the Plaintiff. Indeed it is the Plaintiff's own admissions to shredding certain files and missing others to her chain-of-command that caused her to be the focus of an internal investigation. The Plaintiff has not provided the Court with any evidence that Miami-Dade Police has singled her out for an investigation as a pretext to discriminate against her because she is a woman. Under the law Miami-Dade Police had ample evidence that the Plaintiff was missing files and had no choice but to initiate an investigation based on the facts known to it at the time.

The Plaintiff's sole pretext argument is that Lt. Wilcox knew of 13 male detectives also missing files when he decided to put her on relieved of duty status. Yet the undisputed facts are that Capt. Rock gave the initial order to place the Plaintiff on relieved of duty status pending an investigation if the Plaintiff could not produce her missing files. The Plaintiff has failed to provide the Court with evidence that any of the other detectives in the Intracoastal GIU are missing case files and physical evidence. Moreover, the Plaintiff has not pointed to anything on the record or entered any evidence that illustrates that Capt. Rock or anyone in the chain-of-command at Miami-Dade Police knew of any other detectives missing case files when the decision to place the Plaintiff on relieved of duty status.

Based on the undisputed facts on the record no reasonable jury could conclude that the Plaintiff was placed on relieved of duty status and investigated for missing case files because she is a woman. Because the Plaintiff was unable to establish a *prima facie* case for gender discrimination and unable to provide evidence that the

investigation was a pretext for discrimination the Defendant is entitled to summary judgment. *See Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 892-96 (11th Cir. 2015) (affirming summary judgment in favor of defendant where plaintiff failed to prove a *prima facie* case of gender discrimination and where plaintiff failed to prove that employment actions were a pretext for discrimination based on gender); *Galdamez*, 578 F. App'x at 892 (affirming summary judgment in favor of the defendant when the plaintiff lacked evidence of an adequate comparator, failing to prove a *prima facie* case for gender discrimination); *Williams v. Ala. Dept. of Corr.*, 2016 WL 2894060, at *3-4 (11th Cir. May 18, 2016) (affirming summary judgment in favor of the defendant when the plaintiff failed to show an adequate comparator, thus failing to prove a *prima facie* case for discrimination).

### D.     *Plaintiff's Retaliation Claim Also Fails*

The Plaintiff claims that Miami-Dade Police referred her investigation to the State Attorney's office because she made an EEOC complaint about gender discrimination. To substantiate a retaliation claim a plaintiff must prove that : (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *Olmstead v. Taco Bell*, 141 F.3d 1457, 1460 (11th Cir. 1998).

The Defendant does not contest that the Plaintiff filed an EEOC complaint against Miami-Dade Police and that is a statutorily protected expression. But the Defendant does argue that referring the Plaintiff's investigation to the State Attorney's office is not an adverse employment action. "For an action . . . to be considered

'materially adverse' and intended as retaliation, the employee must prove the action would 'dissuade a reasonable worker from making or supporting a charge of discrimination." *Rademakers v. Scott*, 350 F. Appx. 408, 412 (11th Cir. 2009) (citing *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Miami-Dade Police referred the investigation to the State Attorney because Sgt. Calvo of the Professional Compliance Bureau thought probable cause existed to believe that the Plaintiff committed official misconduct for her missing case files.[2] A referral of an investigation to the State Attorney on its own might dissuade a worker from pursuing a discrimination claim. But as a police officer Sgt. Calvo has a duty to refer crimes to the State Attorney for prosecution whenever probable cause exists. Additionally, as previously stated an investigation into employee misconduct is not an adverse employment action. *See Peltier*, 388 F.3d at 988; *see also Breaux*, 205 F.3d at 157-58. Moreover, because referral of the investigation to the State Attorney is required when Sgt. Calvo uncovers probable cause that a crime has been committed it cannot be construed as an adverse employment action.

Even so, the Defendant is entitled to summary judgment because the Plaintiff fails to prove that the referral of the investigation to the State Attorney's office was causally linked to her filing an EEOC complaint. *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) ("[R]equires a plaintiff to demonstrate that 'the decision-makers were aware of the protected conduct, and that the protected activity and the adverse

---

[2] The relevant Florida Statute that Sgt. Calvo believed the Plaintiff violated was Fla. Stat. § 838.022.

action were not wholly unrelated") (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).

The EEOC complaint filed by the Plaintiff was docketed on May 30, 2012 and the County received the complaint June 11, 2012. The Plaintiff contends that Sgt. Calvo referred the case to the State Attorney on May 22, 2012 armed with knowledge of the EEOC complaint. The record is devoid of any evidence that Sgt. Calvo had such knowledge of the EEOC complaint prior to his referral. The referral cannot be retaliation for protected activity if Sgt. Calvo did not know about the EEOC complaint when he originally referred the investigation to the State Attorney. *Brungart v. BellSouth Telecommc'ns, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]he plaintiff must generally show that the decision-maker was aware of the protected conduct at the time of the adverse employment action").

The bottom line is that the Plaintiff is unable to prove a *prima facie* case for retaliation when Sgt. Calvo referred her investigation to the State Attorney because Sgt. Calvo did so before Miami-Dade Police was served with the Plaintiff's EEOC complaint. Additionally, it is undisputed that Sgt. Calvo had probable cause to believe that the Plaintiff committed the offense of official misconduct for missing case files and physical evidence. The Plaintiff carries the burden to prove that Miami-Dade Police referred her investigation to the State Attorney as a pretext to retaliate against her for filing an EEOC complaint. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494-95 (11th Cir. 1989) ("If the employer articulates some legitimate, non-

discriminatory reason for the discharge, then the employee must be given the opportunity to demonstrate that the employer's reason is pretextual").

The Plaintiff cannot show that Miami-Dade Police referred their internal investigation against her to the State Attorney as pretext for retaliation. The undisputed facts show that Sgt. Calvo initially referred the investigation to the State Attorney before Miami-Dade Police and the County received notice of the Plaintiff's EEOC complaint. Furthermore the Plaintiff cannot raise a factual dispute that Sgt. Calvo made the referral to the State Attorney for any reason besides his duty as a police officer to refer potential criminal matters where he believes probable cause exists to the State Attorney.

In short, the Plaintiff failed to meet her *prima facie* case of retaliation against Miami-Dade Police and also failed to raise a genuine issue of fact that Miami-Dade Police referred her investigation to the State Attorney as pretext for retaliation. Because there is no evidence on the record that a reasonable jury could decide that Miami-Dade Police referred the Plaintiff's internal investigation to the State Attorney's office as retaliation for filing an EEOC complaint, the Defendant is entitled to summary judgment. *See Gary v. Hale*, 212 F. App'x 952, 960-61 (11th Cir. 2007) (affirming summary judgment in favor of the employer where the plaintiff failed to establish that the employer's legitimate reason for the employment action was a pretext for retaliation); *Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 831-33 (11th Cir. 2005) (affirming summary judgment in favor of the employer where the plaintiff failed to prove a *prima facie* case for retaliation but also failing to prove that

the employment action was a pretext for retaliation); *McShane v. Gonzales*, 144 F. App'x 779, 790-92 (11th Cir. 2005) (affirming summary judgment in favor of the employer where the plaintiff failed to prove the employer knew about the employee's EEOC complaint when employer made the decision to effect the employment action and also failed to show the employment action was a pretext for retaliation).

### III.  CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED**. Final Judgment in favor of Defendant will be separately entered.

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of August, 2016.

                                          /s/   *Edwin G. Torres*
                                          EDWIN G. TORRES
                                          United States Magistrate Judge